IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

GLENDA C. HALL, )
               Plaintiff, )
v. ) Case No. CIV-11-325-KEW
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
               Defendant. )

## OPINION AND ORDER

Plaintiff Glenda C. Hall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 23, 1958 and was 51 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant worked in the past as a janitor and house cleaner. Claimant alleges an inability to work beginning September 16, 2008 due to

limitations resulting from post-traumatic stress disorder ("PTSD") and depression.

### Procedural History

On October 1, 2009, Claimant protectively filed for disabled widow's benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 18, 2010, an administrative hearing was held before ALJ Richard J. Kallsnick in Tulsa, Oklahoma. On April 16, 2010, the ALJ issued an unfavorable decision. On July 28, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a janitor.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

4

properly evaluate the medical source evidence; and (2) failing to perform a proper credibility assessment.

### Evaluation of the Medical Source Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of PTSD and major depressive disorder. (Tr. 15). He determined Claimant retained the RFC to perform less than the full range of medium work except that she could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk up to 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The ALJ found no limitations in the ability to push and/or pull and no postural limitations. Claimant was limited to simple tasks with routine supervision, had the ability to relate superficially with supervisors and co-workers but would not be able to have any contact with the general public. The ALJ stated Claimant had mild to moderate pain which would be noticeable to her, but would not affect Claimant from remaining alert. Claimant also was taking medications which would not affect her from remaining alert. (Tr. 17). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform her past relevant work as a janitor and the representative jobs of hand packer, dishwasher, bench assembler, and motel housekeeper. As a result, the ALJ concluded Claimant was not disabled. (Tr. 23).

Despite the title Claimant gives to this allegation of error, she includes a litany of various unrelated arguments within the same heading. Claimant first contends the ALJ failed to develop the record by failing to order additional testing. Claimant refers to the consultative mental examination performed by Dr. Denise LaGrand on December 22, 2008. Claimant told Dr. LaGrand that she suffered from depressive syndrome characterized by crying, anger, nausea, fear, sadness, and confusion. She also experienced anxiety symptoms by feeling as if she can't breathe, hyperventilating, experiencing dizziness, sweating, and fear of strangers. She stated she had difficulty remembering important things and was easily confused. Claimant told Dr. LaGrand that she felt guilty for "the babies that were sacrificed to the devil." (Tr. 171). Dr. LaGrand found Claimant's report of babies being bred and sacrificed did not seem credible, but could not be discounted. (Tr. 175).

Dr. LaGrand diagnosed Claimant with PTSD, Major Depressive Disorder, moderate, rule out Delusional Disorder with a GAF of 50. (Tr. 175). Claimant's memory skills appeared to be below average and her pace was slow. Claimant's IQ was estimated to be in the low average range and her functioning was consistent with her educational, job history, and her estimated IQ. Her ability to follow instructions was low average. Her response in a work

6

setting was low average. Her ability to communicate and interact in a socially adequate manner was fair. Her ability to function independently was fair. Her capacity to cope with the typical mental/cognitive demands of basic work-like tasks, sustain concentration and persistence on basic tasks, and complete work-like tasks within an acceptable time frame was fair. Id.

Claimant contends the ALJ should have ordered additional testing to rule out delusional disorder in accordance with Dr. LaGrand's diagnosis. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v.

7

Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

In this instance, the ALJ afforded Dr. LaGrand's opinions "great weight." (Tr. 20). At the same time, Dr. LaGrand recommended that a delusional disorder be ruled out and the ALJ

ignored this portion of the opinion. An ALJ may not pick and choose among the medical reports, relying upon those portions that support a finding of non-disability while rejecting those that do not. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). Without the additional testing recommended by Dr. LaGrand, a full picture of the extent of Claimant's limitations cannot be assessed. On remand, the ALJ shall inform himself of the full extent of Claimant's condition through such additional testing or consultative examinations as may be necessary.

Claimant also contends that ALJ should have considered her GAF of 50 in his assessment. The ALJ did acknowledge this GAF in his decision but concluded Claimant had not been consistent with her treatment or with medication compliance. (Tr. 20). By including these terms together, the ALJ is presumably contending that the low GAF is attributable to Claimant's inconsistent treatment and non-compliance. Nothing in the medical record, however, reaches this conclusion and it appears the ALJ is imposing his own unqualified medical opinion upon Claimant's circumstance.

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116,

1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to

discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). In this case, however, the ALJ appears to have rejected the limitations demonstrated by a low GAF based upon an impermissible reason. On remand, the ALJ shall re-evaluate his assessment of the effect a low GAF had upon Claimant.

Claimant also contends the ALJ failed to properly consider the limitations imposed by non-examining agency professionals and by not including all limitations found by these professionals in his hypothetical questioning of the vocational expert. On remand, the ALJ shall examine these findings and the form of the questions posed to the vocational expert to insure that the questioning adequately reflects the totality of Claimant's functional limitations.

### Credibility Determination

Claimant contends the ALJ did not properly assess her credibility. This Court agrees that the use of language which

11

suggests an RFC was predetermined before Claimant's credibility was assessed is error. The ALJ shall go beyond this irrational boilerplate finding and affirmatively link his credibility findings to the medical record as required by the applicable law.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 22nd day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE